# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 12/11/2025 07:13:03 PM.
30-2025-01532859-CU-WT-NJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By J. Esquivel, Deputy Clerk.

Alexander J. Taylor SBN#332334
**RD Law Group, LLP**
707 Wilshire Blvd, 53rd Floor
Los Angeles, CA 90017
Phone: (424) 600-8016
Fax: (424) 535-1500
Email: ataylor@rdlawgroup.com

Attorney for WILLIAM TORRES

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ORANGE**

Assigned for All Purposes
Judge Scott A Steiner
30-2025-01532859-CU-WT-NJC

WILLIAM TORRES, an individual,

Plaintiff,

VS.

CBRE, INC., a Delaware corporation; HASSAN DOE, an individual; and DOES 1 through 100, inclusive,

Defendants,

**COMPLAINT FOR:**

1. **FMLA/CFRA Interference and Retaliation**
2. **Wrongful Termination in Violation of Public Policy**
3. **Failure to Engage in the Interactive Process**
4. **Failure to Reasonably Accommodate**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. PLAINTIFF WILLIAM TORRES was a dedicated Building Engineer who served DEFENDANT CBRE, INC. with distinction for over four years from June 2021 to October 2025, maintaining an exemplary employment record with no disciplinary history, no write-ups, and no performance issues throughout his entire tenure. After notifying his supervisor Hassan on September 7, 2025, of his intention to take CFRA/FMLA leave for the birth of his child, during which conversation Hassan appeared irritable and unhappy about the leave request, TORRES took approved parental leave from July 16, 2025, when his child was born, through his scheduled return date of October 8, 2025. On October 7, 2025, the day before his planned return to work, Hassan instructed TORRES to stay home until they got things sorted out, providing no explanation despite TORRES's four years of reliable service. On October 14, 2025, in a recorded telephone conversation, Hassan and Michelle from the HR department informed TORRES that he was not allowed to come back and would be terminated effective October 24, 2025, without providing any legitimate reason for the termination. Throughout his employment, DEFENDANT also systematically violated wage and hour laws by failing to provide compliant meal breaks, with TORRES frequently unable to take his meal period before the fifth hour due to work demands and contractor supervision, and by failing to maintain proper time records documenting meal periods.

2. Through their actions, DEFENDANT CBRE, INC. engaged in unlawful employment practices including FMLA/CFRA interference and retaliation, wrongful termination in violation of public policy, failure to engage in the interactive process, failure to reasonably accommodate, and systematic wage and hour violations. DEFENDANT's conduct violated multiple state and federal laws, including but not limited to the Family and Medical Leave Act, California's Family Rights Act, California's Fair Employment and Housing Act, and various provisions of the California Labor Code, causing TORRES substantial economic damages and emotional distress. DEFENDANT's calculated pattern of retaliatory conduct following TORRES's exercise of his protected right to take parental leave demonstrates a

willful disregard for California's and federal workplace protection laws, particularly given the temporal proximity between TORRES's leave and his unlawful termination immediately upon his scheduled return to work.

**PARTIES AND VENUE**

3. At all times mentioned in this complaint, PLAINTIFF WILLIAM TORRES was and is an individual, a 38-year-old Hispanic male residing in Los Angeles County, California. At all times mentioned herein, TORRES was employed by DEFENDANTS as a Building Engineer at their Irvine, California location.

4. At all times mentioned in this complaint, DEFENDANT CBRE, INC. is believed to be a corporation duly organized and existing under the laws of the State of Delaware, authorized to do and doing business in the State of California, with principal places of business located at 2375 N Glenville Drive, Richardson, Texas 75082, and 18575 Jamboree Road, Irvine, California 92612. DEFENDANT CBRE, INC. is a property management company that employed PLAINTIFF TORRES at its Irvine, California location. At all relevant times, DEFENDANT CBRE, INC. was an employer covered under the Family and Medical Leave Act and the California Family Rights Act, employing more than the requisite number of employees necessary to be subject to such statutes and the California Fair Employment and Housing Act.

5. At all times mentioned in this complaint, DEFENDANT HASSAN DOE ("DEFENDANT HASSAN") was and is an individual who was employed by DEFENDANT CBRE, INC. as a supervisor and/or manager with authority over PLAINTIFF TORRES. DEFENDANT HASSAN participated directly in the adverse employment actions against PLAINTIFF TORRES as alleged herein. The underlying events described herein occurred in Orange County, California.

6. Defendants DOES 1 through 100 are sued under fictitious names. Their true names and capacities are unknown to Plaintiff. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named DOES are responsible in some way for the

occurrences herein alleged and Plaintiff's damages as alleged herein. When the true names of DOES are ascertained, Plaintiff will amend this Complaint with their true names and capacities.

7. At all relevant times herein, DEFENDANTS were the employers of PLAINTIFF TORRES within the meaning of the California Fair Employment and Housing Act, Government Code section 12900 et seq., the California Labor Code, and the Family and Medical Leave Act. At all relevant times, DEFENDANTS were agents and employees of each other and were acting within the course and scope of such agency and employment.

8. Jurisdiction and venue are proper in Orange County, California, as the unlawful practices alleged herein occurred in Orange County and DEFENDANT CBRE, INC. does substantial business in Orange County through its Irvine, California location where PLAINTIFF TORRES was employed.

9. All administrative prerequisites have been complied with.

10. The amount in controversy in this matter exceeds the minimum jurisdictional limits of this Court.

**FACTUAL ALLEGATIONS**

11. PLAINTIFF WILLIAM TORRES was employed by DEFENDANT CBRE, INC. as a Building Engineer from approximately June 2021 to October 24, 2025, a tenure spanning over four years. PLAINTIFF's employment duties included responding to emergencies and issues including plumbing, electrical, HVAC, and general maintenance.

12. Throughout his employment, PLAINTIFF worked at DEFENDANT CBRE, INC.'s Braveon account facility located off Myford in Irvine, California, starting at this account around August. PLAINTIFF worked under the supervision of DEFENDANT HASSAN, who served as his manager and worked remotely, not regularly present at the worksite.

13. During his four-year employment, PLAINTIFF maintained exemplary work performance with no complaints, disciplinary warnings, or write-ups. PLAINTIFF was

considered a reliable and dedicated employee with an unblemished employment record.

14. On July 16, 2025, PLAINTIFF's child was born, triggering his need for protected CFRA/FMLA parental leave.

15. On September 7, 2025, PLAINTIFF verbally informed his supervisor DEFENDANT HASSAN that he would be taking parental leave under CFRA/FMLA for the birth of his child. During this conversation, DEFENDANT HASSAN appeared irritable and unhappy about the leave request, responding to PLAINTIFF's questions with a dismissive demeanor that demonstrated animus toward PLAINTIFF for exercising his protected rights.

16. PLAINTIFF's parental leave was properly approved and administered through Sedgwick, DEFENDANT CBRE, INC.'s third-party leave administrator. The State of California provided eight weeks of leave, and DEFENDANT covered an additional four weeks, for a total of approximately twelve weeks of protected leave.

17. PLAINTIFF took approved family and parental leave from July 16, 2025, through October 8, 2025. PLAINTIFF has documentation from Sedgwick confirming the approval of his protected leave.

18. PLAINTIFF was scheduled to return to work on October 8, 2025, following the completion of his twelve weeks of approved CFRA/FMLA leave.

19. On October 7, 2025, the day before his scheduled return to work, PLAINTIFF contacted DEFENDANT HASSAN to confirm his return. DEFENDANT HASSAN instructed PLAINTIFF to stay home until they got things sorted out and assured him his pay would continue. This instruction to stay home was itself an adverse action suggesting PLAINTIFF's return to work was being blocked.

20. DEFENDANT HASSAN refused to provide any explanation for why PLAINTIFF could not return to work as scheduled despite PLAINTIFF's four years of exemplary service and approved leave status.

21. From October 8, 2025, through October 13, 2025, PLAINTIFF remained at home per DEFENDANT HASSAN's instruction, creating increasing uncertainty about his

employment status and whether he would be allowed to return to his position.

22. On October 14, 2025, DEFENDANT HASSAN and Michelle, a Human Resources representative, called PLAINTIFF in a conversation that PLAINTIFF recorded. During this call, DEFENDANTS informed PLAINTIFF that he was not allowed to come back to work and that his employment would be terminated effective October 24, 2025.

23. DEFENDANTS provided no legitimate reason for the termination during the October 14, 2025, call. DEFENDANTS merely told PLAINTIFF that he could reapply within the company at a different account.

24. DEFENDANTS provided PLAINTIFF with no termination paperwork, no written explanation for the adverse action, and no severance offer despite his four years of service.

25. Co-workers informed PLAINTIFF that the account manager specifically didn't want him there, suggesting discriminatory animus as the basis for the termination rather than any legitimate business reason.

26. The Braveon account was described as having high turnover, supporting an inference that DEFENDANT preferred to terminate employees rather than accommodate protected leave rights.

27. PLAINTIFF's termination occurred immediately following his exercise of protected CFRA/FMLA rights and within days of his scheduled return from approved parental leave. The temporal proximity between PLAINTIFF's protected leave and the adverse employment action demonstrates clear interference with and retaliation for PLAINTIFF's exercise of protected rights.

28. DEFENDANT HASSAN's visible negative reaction when PLAINTIFF first notified him of the leave on September 7, 2025, combined with the immediate blocking of PLAINTIFF's return to work and swift termination, demonstrates a calculated pattern of retaliation and discriminatory animus toward PLAINTIFF for taking protected parental leave.

29. Throughout PLAINTIFF's employment and particularly following his leave

notification, DEFENDANTS completely failed to engage in any interactive process to discuss PLAINTIFF's needs, rights, or any accommodations that might be necessary.

30. Despite being aware of PLAINTIFF's protected status as an employee returning from CFRA/FMLA leave, DEFENDANTS made no effort to reinstate PLAINTIFF to his position or to engage in good faith discussions about his return to work.

31. DEFENDANTS' conduct in blocking PLAINTIFF's return to work on October 7, 2025, and terminating him effective October 24, 2025, constituted unlawful interference with PLAINTIFF's CFRA/FMLA rights and unlawful retaliation for PLAINTIFF's exercise of those protected rights.

32. Following termination, DEFENDANTS failed to pay PLAINTIFF all wages owed, including unpaid meal period premiums for the numerous occasions throughout his employment when compliant meal breaks were not provided.

33. DEFENDANTS' pay stubs failed to accurately reflect meal period violations and premium pay owed, rendering the wage statements non-compliant with California Labor Code section 226(a).

34. DEFENDANTS' termination of PLAINTIFF was pretextual and constituted unlawful retaliation for PLAINTIFF's disclosure of his need for protected leave and his exercise of CFRA/FMLA rights, as well as wrongful termination in violation of the fundamental public policies embodied in California and federal law protecting employees who take family and medical leave.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FMLA/CFRA Interference and Retaliation
### (29 U.S.C. § 2601 et seq.; Cal. Gov't Code § 12945.2)
### (Against All Defendants)

35. PLAINTIFF repeats and realleges each of the allegations set forth in this complaint.

36. The Family and Medical Leave Act (29 U.S.C. § 2601 et seq.) and the California

Family Rights Act (California Government Code § 12945.2) provide eligible employees with the right to take up to twelve weeks of protected leave for the birth of a child and to bond with that child. These statutes prohibit employers from interfering with, restraining, or denying the exercise of an employee's FMLA/CFRA rights, and from discriminating or retaliating against employees for taking protected leave.

37. PLAINTIFF WILLIAM TORRES was an eligible employee under both FMLA and CFRA. DEFENDANTS employed more than fifty employees within seventy-five miles of PLAINTIFF's workplace for purposes of FMLA coverage and more than five employees for purposes of CFRA coverage. PLAINTIFF had been continuously employed by DEFENDANTS since June 2021, more than twelve months prior to taking leave. PLAINTIFF had worked well over 1,250 hours during the twelve months preceding his leave. PLAINTIFF had not taken more than twelve weeks of family or medical leave in the preceding twelve-month period.

38. PLAINTIFF's leave from July 16, 2025, through October 8, 2025, for the birth of his child on July 16, 2025, was for a qualifying reason under both FMLA and CFRA. PLAINTIFF's leave was properly approved by DEFENDANTS and administered through Sedgwick, DEFENDANTS' third-party leave administrator. The State of California provided eight weeks of leave benefits and DEFENDANTS covered an additional four weeks, for a total of approximately twelve weeks of protected leave.

39. DEFENDANTS interfered with PLAINTIFF's FMLA and CFRA rights by preventing his return to work when he was scheduled to return on October 8, 2025. On October 7, 2025, the day before PLAINTIFF's scheduled return, DEFENDANT HASSAN instructed PLAINTIFF to stay home until they got things sorted out, refusing to allow PLAINTIFF to return to his position despite his properly approved leave status and four years of exemplary service. On October 14, 2025, DEFENDANT HASSAN and Michelle informed PLAINTIFF that he was not allowed to come back and would be terminated effective October 24, 2025. This conduct constituted unlawful interference with PLAINTIFF's protected right to return to

work following FMLA/CFRA leave.

40. DEFENDANTS retaliated against PLAINTIFF for taking protected leave by terminating his employment effective October 24, 2025, just sixteen days after his scheduled return date, without any legitimate business reason and despite over four years of exemplary performance with no disciplinary history, no write-ups, and no performance issues. DEFENDANT HASSAN's visible displeasure when PLAINTIFF notified him of the leave on September 7, 2025—appearing irritable and unhappy and responding to PLAINTIFF's questions with a dismissive demeanor—demonstrates discriminatory animus toward PLAINTIFF for exercising his protected rights. The temporal proximity between PLAINTIFF's leave and his termination creates a strong inference of retaliation, as PLAINTIFF was blocked from returning to work immediately upon the conclusion of his protected leave and terminated within days thereafter. The lack of any stated reason for termination, combined with DEFENDANTS' comment that PLAINTIFF could reapply elsewhere in the company, proves the termination was pretextual and designed to punish PLAINTIFF for taking parental leave. Co-workers' reports that the account manager specifically didn't want PLAINTIFF there further evidences discriminatory motive unrelated to any legitimate business purpose.

41. DEFENDANTS' interference with PLAINTIFF's rights under FMLA and CFRA was a substantial motivating factor in causing PLAINTIFF harm. As a direct, foreseeable, and proximate result of DEFENDANTS' violations, PLAINTIFF has suffered and will continue to suffer economic damages including lost wages and benefits, loss of employment, back pay, front pay, and other compensatory damages subject to proof at trial.

42. As a direct, foreseeable, and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered and will continue to suffer mental, physical, and emotional distress, including but not limited to humiliation, anxiety, nervousness, depression, loss of self-esteem, sleeplessness, and financial hardship, particularly during what should have been a joyous time bonding with his newborn child and supporting his family. PLAINTIFF has been unable to secure employment since his wrongful termination, adding to his distress and anxiety about his

ability to provide for his family during the holiday season.

43. The unlawful conduct alleged was committed by, or ratified by, officers, supervisors, and/or managing agents of DEFENDANTS, particularly DEFENDANT HASSAN and Michelle, who were acting within the scope and course of their employment and with the knowledge and approval of DEFENDANT CBRE, INC.'s management. DEFENDANTS' misconduct was committed intentionally, willfully, and in reckless disregard of PLAINTIFF's protected rights under FMLA and CFRA. DEFENDANTS' conduct was malicious, oppressive, and fraudulent, entitling PLAINTIFF to punitive damages against DEFENDANTS.

44. PLAINTIFF is entitled to reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 2617(a)(3) and California Government Code section 12965(b). PLAINTIFF is also entitled to liquidated damages under FMLA equal to the amount of compensatory damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

**SECOND CAUSE OF ACTION**
**Wrongful Termination in Violation of Public Policy**
**(Against All Defendants)**

45. PLAINTIFF repeats and realleges each of the allegations set forth in this complaint.

46. California recognizes wrongful termination in violation of public policy as an exception to the at-will employment doctrine when an employee is discharged for reasons that contravene fundamental public policies established by constitutional or statutory provisions. Employment in California is generally at will under Labor Code section 2922, but employees cannot be terminated for unlawful reasons that violate public policy.

47. PLAINTIFF's termination violated fundamental public policies embodied in federal and state law. The Family and Medical Leave Act and the California Family Rights Act, codified at California Government Code section 12945.2, establish critical public policies protecting employees' rights to take family and medical leave without suffering adverse employment consequences. These statutes reflect California's strong public policy ensuring

that employees can bond with newborn children and exercise family care responsibilities without fear of retaliation or discharge. Additionally, California's Fair Employment and Housing Act, Government Code section 12940 et seq., establishes fundamental public policies protecting employees' rights to reasonable accommodation and interactive process discussions. California Labor Code sections 226.7 and 512 establish fundamental public policies requiring employers to provide compliant meal and rest periods and to compensate employees for violations of these protections.

48. PLAINTIFF's termination was tethered to and a direct result of violations of these fundamental public policies. DEFENDANTS terminated PLAINTIFF in retaliation for his exercise of protected leave rights following the birth of his child on July 16, 2025. The temporal proximity between PLAINTIFF's protected leave and his termination demonstrates the retaliatory nature of DEFENDANTS' actions—PLAINTIFF was terminated effective October 24, 2025, just sixteen days after his scheduled return from twelve weeks of protected CFRA/FMLA leave. DEFENDANTS blocked PLAINTIFF from returning to work on his scheduled return date of October 8, 2025, instructing him on October 7, 2025, to stay home until they got things sorted out, then terminated him effective October 24, 2025, without any legitimate business justification.

49. Throughout over four years of employment from June 2021 to October 2025, PLAINTIFF maintained an exemplary record with no performance issues, no disciplinary warnings, and no write-ups. DEFENDANTS provided no legitimate reason for the termination during the October 14, 2025, telephone call when DEFENDANT HASSAN and Michelle informed PLAINTIFF he was not allowed to come back. DEFENDANTS' only explanation was that PLAINTIFF could reapply within the company at a different account, demonstrating the pretextual nature of the termination. Co-workers reported that the account manager specifically didn't want PLAINTIFF there, further evidencing that the termination was based on discriminatory animus rather than any legitimate business reason.

50. DEFENDANT HASSAN demonstrated animus toward PLAINTIFF when

PLAINTIFF notified him on September 7, 2025, of his intention to take parental leave, appearing irritable and unhappy about the leave request and responding to PLAINTIFF's questions with a dismissive demeanor. This negative reaction to PLAINTIFF's exercise of protected rights, combined with the immediate blocking of PLAINTIFF's return to work and swift termination following his leave, demonstrates that DEFENDANTS terminated PLAINTIFF not for any legitimate business reason but because he asserted his protected rights under FMLA and CFRA.

51. Additionally, throughout PLAINTIFF's employment, DEFENDANTS systematically violated meal break requirements under California Labor Code sections 226.7 and 512, requiring PLAINTIFF to work through or interrupt meal breaks due to understaffing and work pressure, failing to maintain adequate records of meal breaks as required by law, and creating a pattern of labor law violations. On multiple occasions PLAINTIFF did not receive his meal break before the fifth hour due to being busy or supervising contractors. At his previous account with DEFENDANTS at Focal Edison, PLAINTIFF similarly experienced interrupted meal breaks. DEFENDANTS failed to maintain time records documenting meal periods, instead requiring PLAINTIFF to submit hours weekly via computer without clocking in or out for meal breaks. This broader pattern of disregarding employee protections under California wage and hour laws supports the conclusion that PLAINTIFF was terminated not for any legitimate business reason but because he asserted his protected rights in an environment where DEFENDANTS routinely disregarded employee protections established by fundamental public policies.

52. As a direct and proximate result of DEFENDANTS' wrongful termination, PLAINTIFF has suffered and will continue to suffer substantial economic losses including loss of wages and benefits from his termination on October 24, 2025, through the present and into the future. PLAINTIFF earned $35.00 per hour working 40 hours per week. PLAINTIFF has been unable to secure employment since his wrongful termination, causing ongoing financial hardship. PLAINTIFF is entitled to back pay for all wages and benefits he would have earned

from the date of termination through trial, and to front pay representing future lost earning capacity, as reinstatement is not a viable option due to the antagonism and hostility PLAINTIFF would face upon return to work with DEFENDANTS.

53. As a direct and proximate result of DEFENDANTS' wrongful termination, PLAINTIFF has suffered and will continue to suffer severe emotional distress, humiliation, anxiety, stress, and damage to his professional reputation. PLAINTIFF has experienced shock, embarrassment, physical distress, depression, loss of self-esteem, sleeplessness, and psychological trauma from being wrongfully terminated immediately after taking protected leave to bond with his newborn child. The termination during what should have been a joyous time caused PLAINTIFF tremendous stress and anxiety about his ability to support his family. PLAINTIFF faces ongoing uncertainty about his future employment and financial stability, adding to his emotional suffering.

54. The unlawful conduct alleged was committed by, or ratified by, officers, supervisors, and/or managing agents of DEFENDANTS, particularly DEFENDANT HASSAN and Michelle, who were acting within the scope and course of their employment and with the knowledge and approval of DEFENDANT CBRE, INC.'s management. DEFENDANTS' misconduct was committed intentionally, willfully, maliciously, and in reckless and conscious disregard of PLAINTIFF's rights and the fundamental public policies protecting employees who exercise their rights to take family and medical leave and who are protected by California wage and hour laws. DEFENDANTS' conduct demonstrated a willful disregard for PLAINTIFF's protected rights and for the fundamental public policies embodied in FMLA, CFRA, FEHA, and the California Labor Code. PLAINTIFF is therefore entitled to punitive damages to punish DEFENDANTS' conduct and to deter similar violations in the future.

55. As a result of DEFENDANTS' conduct, PLAINTIFF has been forced to retain an attorney in order to protect his rights and has incurred and will incur attorneys' fees and costs. Accordingly, PLAINTIFF seeks reasonable attorneys' fees and costs incurred in this litigation pursuant to California Government Code section 12965(b) and other applicable fee-shifting

statutes.

**THIRD CAUSE OF ACTION**
**Failure to Engage in the Interactive Process**
**(Cal. Gov't Code § 12940(n))**
**(Against All Defendants)**

56. PLAINTIFF repeats and realleges each of the allegations set forth in this complaint.

57. Under California Government Code § 12940(n), employers have an affirmative duty to engage in a timely, good faith interactive process with employees who have known needs related to protected leave, accommodation, or return to work following protected leave to determine effective solutions and facilitate successful reintegration into the workplace.

58. DEFENDANTS knew of PLAINTIFF's status as an employee exercising protected FMLA/CFRA leave rights and his scheduled return to work on October 8, 2025, through PLAINTIFF's direct notification to DEFENDANT HASSAN on September 7, 2025, and through administration of the approved leave by Sedgwick, DEFENDANTS' third-party administrator.

59. PLAINTIFF was scheduled to return to work on October 8, 2025, following approximately twelve weeks of approved parental leave from July 16, 2025. On October 7, 2025, when PLAINTIFF contacted DEFENDANT HASSAN to confirm his return, DEFENDANT HASSAN's instruction to stay home until they got things sorted out triggered an obligation for DEFENDANTS to engage in good faith communication with PLAINTIFF regarding his return to work.

60. Despite this knowledge and PLAINTIFF's scheduled return from protected leave, DEFENDANTS failed to engage in any meaningful interactive process with PLAINTIFF to facilitate his return to work or to discuss any concerns DEFENDANTS may have had.

61. Throughout the period from October 7, 2025, when PLAINTIFF was told to stay home, through October 14, 2025, when DEFENDANTS terminated him, DEFENDANTS never initiated any dialogue with PLAINTIFF about his needs, never asked whether any

accommodations might be helpful for his transition back to work, never discussed the reasons for blocking his return, and never explored any alternatives to termination. When DEFENDANT HASSAN and Michelle finally contacted PLAINTIFF on October 14, 2025, they simply declared that he was not allowed to come back and would be terminated, with no discussion, no exploration of options, and no good faith engagement whatsoever.

62. A good faith interactive process would have required DEFENDANTS to communicate with PLAINTIFF about his scheduled return, confirm his availability and readiness to return to work, discuss any transition needs, and engage in meaningful two-way dialogue. Instead, DEFENDANTS unilaterally blocked PLAINTIFF's return without explanation, left him in limbo for days without communication, and then summarily terminated him without any interactive discussion. This conduct demonstrates a complete failure to engage in the required process.

63. DEFENDANTS' failure to engage in the interactive process was a substantial factor in causing PLAINTIFF harm. PLAINTIFF was deprived of the opportunity to work with his employer to ensure a successful return to work following protected leave. PLAINTIFF lost his job when reasonable solutions existed through good faith dialogue. PLAINTIFF suffered economic losses, emotional distress, and uncertainty that could have been avoided through the required interactive process.

64. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered special damages, including but not limited to past and future loss of income, benefits, and other damages to be proven at the time of trial.

65. As a direct and proximate result of DEFENDANTS' unlawful conduct, PLAINTIFF has suffered general damages, including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at trial.

66. The unlawful conduct alleged was committed by, or ratified by officers, supervisors, and/or managing agents who were acting within the scope and course of their

employment. DEFENDANTS' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling PLAINTIFF to punitive damages against DEFENDANTS.

67. PLAINTIFF is entitled to reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b).

**FOURTH CAUSE OF ACTION**
**Failure to Reasonably Accommodate**
**(Cal. Gov't Code § 12940(m))**
**(Against All Defendants)**

68. PLAINTIFF repeats and realleges each of the allegations set forth in this complaint.

69. At all relevant times, the California Fair Employment and Housing Act (FEHA), California Government Code § 12940 et seq., was in full force and effect and binding on DEFENDANTS. PLAINTIFF was an "eligible employee," and DEFENDANTS were "covered employers" under FEHA.

70. Government Code § 12940(m) makes it an unlawful employment practice for an employer to fail to make reasonable accommodation for the known needs of an employee. California law requires employers to make reasonable accommodations for employees' protected needs, including facilitating an employee's return to work following protected family leave. Under FMLA and CFRA, eligible employees have the right to be restored to their same or an equivalent position upon return from leave. This restoration right is itself a form of required accommodation that employers must provide.

71. PLAINTIFF took approved parental leave under CFRA/FMLA from July 16, 2025, through October 8, 2025, following the birth of his child on July 16, 2025. PLAINTIFF complied with all leave requirements by notifying DEFENDANT HASSAN on September 7, 2025, of his intention to take parental leave, working with Sedgwick, DEFENDANTS' third-party leave administrator, to obtain proper approval, and completing his twelve-week protected

leave period. PLAINTIFF was scheduled to return to his Building Engineer position on October 8, 2025. The accommodation PLAINTIFF needed—and was legally entitled to—was simply to resume his employment in his same role or an equivalent position.

72. DEFENDANTS knew of PLAINTIFF's status as an employee returning from protected CFRA/FMLA leave and his need to be restored to his position. DEFENDANTS had full knowledge of PLAINTIFF's leave through PLAINTIFF's direct notification to DEFENDANT HASSAN on September 7, 2025, through the administration of the leave by Sedgwick, and through PLAINTIFF's contact with DEFENDANT HASSAN on October 7, 2025, to confirm his return on October 8, 2025.

73. Despite his status as an employee returning from protected leave, PLAINTIFF was able to perform the essential functions of his job as a Building Engineer, as demonstrated by his over four years of exemplary performance from June 2021 through July 2025 with no complaints, no disciplinary actions, no write-ups, and no performance issues.

74. DEFENDANTS not only failed to accommodate PLAINTIFF but actively prevented his return to work. Instead of welcoming PLAINTIFF back to his position on October 8, 2025, DEFENDANT HASSAN instructed him on October 7, 2025, to stay home until they got things sorted out. Rather than accommodating PLAINTIFF's return, DEFENDANTS blocked it. During the period from October 8, 2025, through October 13, 2025, DEFENDANTS failed to restore PLAINTIFF to his position. On October 14, 2025, DEFENDANTS definitively refused to accommodate PLAINTIFF when DEFENDANT HASSAN and Michelle announced that PLAINTIFF was not allowed to come back and would be terminated effective October 24, 2025.

75. The accommodation PLAINTIFF sought—restoration to his position—was eminently reasonable. PLAINTIFF had performed the Building Engineer job excellently for over four years with no performance issues. The position still existed and equivalent positions were available. PLAINTIFF's return would have imposed no hardship on DEFENDANTS. Yet DEFENDANTS refused this reasonable accommodation entirely.

76. DEFENDANTS' refusal was not based on any inability to accommodate. The same Building Engineer job PLAINTIFF had performed for over four years was still there. DEFENDANTS simply refused to let PLAINTIFF return following his protected leave, demonstrating that the refusal was discriminatory rather than based on legitimate business necessity. Reasonable accommodations existed and DEFENDANTS' failure to provide them directly caused PLAINTIFF's termination and all resulting damages.

77. DEFENDANTS' failure to accommodate PLAINTIFF's known need to return from protected leave was a substantial factor in causing PLAINTIFF harm.

78. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered special damages, including but not limited to past and future loss of income, benefits, and other damages to be proven at the time of trial.

79. As a direct and proximate result of DEFENDANTS' unlawful conduct, PLAINTIFF has suffered general damages, including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at trial. PLAINTIFF suffered substantial economic losses including loss of income, benefits, and future earning capacity. PLAINTIFF suffered severe emotional distress, humiliation, and anxiety from being denied the accommodation of returning to his position following the birth of his child and during what should have been a joyous time bonding with his newborn.

80. The unlawful conduct alleged was committed by, or ratified by officers, supervisors, and/or managing agents who were acting within the scope and course of their employment. DEFENDANTS' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling PLAINTIFF to punitive damages against DEFENDANTS. DEFENDANTS' refusal to accommodate was willful, malicious, and in conscious disregard of PLAINTIFF's protected rights.

81. PLAINTIFF is entitled to reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b).

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF WILLIAM TORRES respectfully prays that this Court enter judgment in his favor and against DEFENDANTS CBRE, INC., HASSAN and DOES 1 through 100, inclusive, and each of them, as follows:

a. For general damages for emotional distress, pain and suffering, humiliation, anxiety, mental anguish, and related non-economic harm according to proof at trial;
b. For special damages including past lost wages and compensation, future lost wages and earning capacity, lost benefits and employment perquisites, and other economic losses according to proof at trial;
c. For statutory penalties pursuant to California Labor Code § 226 for non-compliant wage statements in an amount according to proof;
d. For waiting time penalties pursuant to California Labor Code §§ 201 and 203 in an amount according to proof;
e. For prejudgment and post-judgment interest at the applicable legal rate;
f. For reasonable attorneys' fees pursuant to 29 U.S.C. § 2617(a)(3), California Government Code § 12965(b), California Labor Code §§ 218.5, 226(h), and other applicable statutes;
g. For costs of suit incurred herein; and
h. For such other and further relief as the Court deems just and proper.

## *DEMAND FOR JURY TRIAL*

PLAINTIFF WILLIAM TORRES hereby demands trial by jury on all issues so triable in this action.

Dated: December 11, 2025

**RD LAW GROUP, LLP**

By: */s/ Alexander J. Taylor*
Alexander J. Taylor
Attorney for Plaintiff
WILLIAM TORRES

Electronically Filed by Superior Court of California, County of Orange, 12/11/2025 07:13:03 PM.
30-2025-01532859-CU-WT-NJC - ROA # 5 - DAVID H. YAMASAKI, Clerk of the Court By J. Esquivel, Deputy Clerk.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
CBRE, INC., a Delaware corporation; HASSAN DOE, an individual; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
WILLIAM TORRES, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: North Justice Center
*(El nombre y dirección de la corte es):* 1275 North Berkeley Avenue
JE ~~Orange County Central Justice Cent~~ Fullerton, CA 92832
~~700 Civic Center Drive West Santa A~~

CASE NUMBER: *(Número del Caso):* 30-2025-01532859-CU-WT-NJC

Assigned for All Purposes
Judge Scott A Steiner

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alexander J. Taylor SBN#332334 (RD LAW GROUP, LLP) 707 Wilshire Blvd 53rd Fl Los Angeles CA 90017 (424) 600-8016

DATE: *(Fecha)* 12/11/2025 DAVID H. YAMASAKI, Clerk of the Court Clerk, by *(Secretario)* J. Esquivel J. Esquivel, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date)*:



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Alexander J. Taylor SBN#332334 332334
RD LAW GROUP, LLP
707 Wilshire Blvd 53rd Fl Los Angeles CA 90017
TELEPHONE NO.: (424) 600-8016 FAX NO.: (424) 535-1500
EMAIL ADDRESS: ataylor@rdlawgroup.com
ATTORNEY FOR *(Name)*: WILLIAM TORRES

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: North Justice Center
MAILING ADDRESS: 1275 North Berkeley Avenue
CITY AND ZIP CODE: Fullerton, CA 92832
BRANCH NAME:

CASE NAME:
WILLIAM TORRES v CBRE, INC et al

**CIVIL CASE COVER SHEET**

☑ **Unlimited** (Amount demanded exceeds $35,000)
☐ **Limited** (Amount demanded is $35,000 or less)

**Complex Case Designation**

☐ Counter ☐ Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 30-2025-01532859-CU-WT-NJC

JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☑ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify)*: (4)
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/11/2025

Alexander J. Taylor (RD LAW GROUP, LLP)
(TYPE OR PRINT NAME)

/s/ Alexander J. Taylor
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition